* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Rideout. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Rideout with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On or about April 26, 2004, an employer-employee relationship existed between plaintiff and the defendant. *Page 2 
2. On April 26, 2004, defendant-employer employed the plaintiff, the parties were subject to and bound by the provisions of the Workers' Compensation Act, and defendant-employer was insured by Zurich Insurance Company.
3. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter.
4. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
5. Plaintiff's average weekly wage is his salary of $1,048.00 and compensation rate is the maximum rate for 2004 of $688.00 for the time he was employed by defendant-employer.
6. All of plaintiff's medical records, including some records for prior treatments were received at the hearing before the Deputy Commissioner or stipulated to after the hearing.
7. All of the Industrial Commission forms filed in this matter were received into evidence.
8. The deposition of Dr. Kenneth Wood was taken on October 17, 2006 and was received into evidence.
9. Plaintiff's discovery responses and part of his personnel file were received into evidence.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 55 years old. *Page 3 
2. Plaintiff began working for defendant-employer in July of 1997 as an equipment operator. Plaintiff was frequently called upon to travel to various locations to perform his job duties, which included significant physical exertion and involved the demolition of buildings and grading work.
3. Prior to working for defendant-employer, plaintiff underwent a diskectomy in 1990 to repair a herniated disk at L5-S1 which was performed by Dr. Dunaway.
4. In September of 2001, plaintiff began treating with Dr. Kenneth Wood, an orthopedic surgeon, for low back pain. At the hearing before the Deputy Commissioner in this matter, plaintiff testified that his back pain was the result of placing a piece of equipment on a trackhoe, although no workers' compensation claim was ever filed.
5. Plaintiff underwent a lumbar fusion with instrumentation at L5-S1 in December of 2001, which was performed by Dr. Wood. Following the surgery, plaintiff returned to work and continued to perform his regular job duties.
6. On April 26, 2004, plaintiff drove to pick up equipment located at Dennis Stewart's property off Interstate 40 in Statesville. Plaintiff arrived at the property at approximately 6:00 a.m., and needed to place a stiff knee on the trackhoe. As plaintiff was carrying the stiff knee, which plaintiff estimated weighed approximately 125 pounds, he felt immediate pain in his lower back.
7. Dennis Stewart, a contract hauler for the defendant, witnessed the incident and testified that he could tell that plaintiff was in immediate pain.
8. Plaintiff immediately called the defendant-employer's office and reported the injury to Gregg Pressley in the human research department, and told defendant-employer's *Page 4 
president, Todd Escaravage later that week. Neither Pressley nor Escaravage corroborated this statement.
9. Plaintiff continued to work following the incident despite pain. Plaintiff testified that he tolerated the pain with over the counter medication.
10. Plaintiff treated with his family physician, Dr. Dan Bellingham, on May 7, 2004, but was only treated for hypertension and increased cholesterol.
11. Plaintiff returned to Dr. Bellingham on June 2, 2004, with complaints of back pain for five to six weeks. The history given by plaintiff to Dr. Bellingham is consistent with an incident occurring on April 26, 2004.
12. Dr. Bellingham ordered a lumbar MRI which was obtained on June 8, 2004, and treated plaintiff with prescription medication.
13. Plaintiff expressed to Dr. Bellingham that his pain was getting worse on July 6, 2004, and Dr. Bellingham referred plaintiff to Dr. Wood.
14. On July 26, 2004, plaintiff treated with Dr. Wood, and indicated that on April 26, 2004, he picked up a heavy piece of steel at work and started having pain, which persisted. Dr. Wood suspected the pain was severe sciatica and a possible disk herniation and ordered a CT-myelogram. The CT-myelogram showed a compression of the left L5 nerve root where there was a disk protrusion at L4-5.
15. Plaintiff initially chose to have a micro-diskectomy rather than a fusion, a more invasive procedure, because he had a big job to do and did not wish to miss too much work. Dr. Wood performed a micro-diskectomy on July 26, 2004. Plaintiff's health insurance paid for this surgery and he also incurred out of pocket expenses.
16. Plaintiff was out of work for approximately four weeks following the surgery. *Page 5 
17. Defendant-employer paid plaintiff his regular salary while he was out of work for the micro-diskectomy from July 18, 2004 until August 23, 2004. This arrangement was similar to the salary continuation plaintiff received following his 2001 back surgery.
18. On October 7, 2004, plaintiff returned to Dr. Wood and the decision was made to undergo surgery to remove the instrumentation from the prior fusion at L5-S1 and then fuse L4-5 with instrumentation. The surgery was performed by Dr. Wood on November 8, 2004. Plaintiff's health insurance paid for this surgery and he also incurred out of pocket expenses.
19. Plaintiff remained out of work until January 9, 2005. Defendant-employer assisted plaintiff in obtaining unemployment benefits while he was out of work for the fusion surgery, or did not contest the award of these benefits even though it was known that plaintiff was incapable of any work at that time. Further, during that period of time, defendant-employer paid plaintiff $1,600.00.
20. Plaintiff continued to have pain, but requested that Dr. Wood return him to work on March 10, 2005. Plaintiff returned to work for defendant-employer.
21. On August 5, 2005 plaintiff was returning a semi-tractor to the equipment yard with no trailer (known a "bob-tailing") when he hit a pothole and was thrown in his truck, re-injuring his back. The plaintiff was out of work until August 10, 2005.
22. On August 31, 2005, plaintiff sought treatment Dr. Alfred Geissele, with Carolina Orthopedic Specialist in Hickory, North Carolina, on the recommendation of a friend.
23. Dr. Geissele diagnosed a probable L4-5 pseudorathrosis and recommended a hardware removal at L4-5, a reinstrmentation and re-fusion. This surgery was performed on January 17, 2006, at Catawba Valley Medical Center. *Page 6 
24. Plaintiff was employed by defendant-employer until September 4, 2005, when it was mutually agreed by defendant-employer that plaintiff could no longer perform his work duties.
25. Plaintiff required additional surgery on his back, which was performed by Dr. Geissele on January 17, 2006.
26. Plaintiff has not yet reached maximum medical improvement and has not been rated or released by any of his treating physicians.
27. The testimony of plaintiff and Dennis Stewart are given greater weight than the testimony of Pressley or Escaravage.
28. Dr. Wood testified that the specific traumatic incident, as described by plaintiff and as found as fact herein, was the cause of plaintiff's injuries and resulting treatment, including the surgeries performed in 2004, and the treatment by Dr. Geissele.
29. Based on a view of the evidence as a whole, the Full Commission finds as fact that plaintiff suffered a specific traumatic incident on April 26, 2004. As a result of the specific traumatic incident, plaintiff suffered an aggravation of his preexisting back condition.
30. The Full Commission further finds that the incident on August 5, 2005, was a direct and natural result of plaintiff's compensable specific traumatic incident.
31. Plaintiff has shown by the greater weight of the evidence that he is currently unable to work in any capacity.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following: *Page 7 
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable specific traumatic injury on April 26, 2004. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
3. Plaintiff has established that he is entitled to temporary total disability at a rate of $688.00 per week for the times periods he was written out of work by his treating physicians following his surgeries, and that he is currently disabled from work. N.C. Gen. Stat. § 97-29.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of her injury by accident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
2. Defendants shall pay plaintiff temporary total disability at a rate of $688.00 per week for the time periods plaintiff has been written out of work by his treating physicians, and continuing until further order of the Commission. The part of this compensation that has accrued shall be paid in a lump sum, subject to the attorney's fee approved. *Page 8 
3. An attorney's fee in the amount of 25% is approved for the plaintiff's counsel, which shall be deducted from the amount owed plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This the 21st day of August, 2007.
 S/______________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
S/______________________ CHRISTOPHER SCOTT COMMISSIONER
S/______________________ PAMELA T. YOUNG COMMISSIONER *Page 1